## UNITED STATES v. ROBINSON et al.
### Civ. No. 2485.

United States District Court,
D. North Dakota, S. D.

Aug. 19, 1952.

Harry Lashkowitz, Asst. U. S. Atty., Fargo, N. D., and Milton E. Moskau, Sp. Asst. U. S. Atty., Grand Forks, N. D., for plaintiff.

E. T. Christianson, Atty. Gen., W. C. Lynch, Asst. Atty. Gen., and Milton K. Higgins, (of Higgins & Donahue), Bismarck, N. D., and J. F. X. Conmy (of Burnett, Bergesen, Haakenstad & Conmy) Fargo, N. D., for defendants.

VOGEL, District Judge.

The United States of America, plaintiff, brings this action against the individual members of the State Livestock Sanitary Board of the State of North Dakota and against the North Dakota Stockmen's Association, a corporation. The complaint charges violation of Ceiling Price Regulation 34, which was promulgated in accordance with the provisions of the Defense Production Act of 1950, as amended, 50 U.S.C.A.Appendix, § 2061 et seq., in that it is claimed that the defendants, contrary to the provisions of the Regulation, increased the charge for inspecting brands on cattle sold in sales rings in North Dakota from 12¢ to 15¢ per head. As alleged, the total overceiling charges for the period sued for approximate $5,868.24. The complaint seeks a permanent injunction and asks for damages of three times the amount of the alleged overcharges. The case has been submitted to the Court upon the pleadings and a stipulation of facts entered into by all parties.

After the Government had rested, the defendants made a motion for dismissal of the action upon the following grounds:

"1. That the O.P.S. has no jurisdiction over the rates of a public utility.

"2. The doctrine of primary administrative jurisdiction requires a reference back to the rate-making body or bodies rather than a disposition thereof in this court in this type of action, and that that is true even if the rate increase has not been properly accomplished.

"3. There is no proof in the record of the specific offense charged in the complaint.

"4. There is no showing in the record of any price increase which is within the purview of the Defense Production Act of 1950 or the lawful Regulations promulgated thereunder.

"5. The O.P.S. has no jurisdiction or authority to establish, freeze or fix a rate for brand inspection.

"6. The Regulations of the O.P.S. in and of themselves do not provide

for the regulation of brand inspection rates or fees.

"7. The O.P.S. has no jurisdiction or authority over not only the rates of public utilities but over any state agency exercising a purely police power within the state.

"8. There is no showing in the record that the President, as provided in the Act, has authorized the institution of a suit for civil damages and that such suit, in any event, is improper in connection with an injunction proceedings."

■ Insofar as it may be applicable to the situation with which the Court is now involved, the Defense Production Act of 1950, as amended, was passed by the Congress to promote the national defense through the maintenance of the nation's economic strength by the prevention of inflation in prices and wages for materials and services in the regular course of trade or business.

Among other things, plaintiff's complaint alleges:

"IV

"a. Section 3 of the Regulation prohibits, on and after May 16, 1951, the sale, and the purchase *in the course of trade or business*, of any service covered by the Regulation at a price higher than the ceiling price prescribed by the Regulation for the seller or supplier. (Emphasis supplied.)

"b. Section 5(a)(1) of the Regulation sets forth the methods for determining the ceiling price in detail, of the services of the defendant, North Dakota Stockmen's Association.

"c. The highest price at which the defendant, North Dakota Stockmen's Association supplied such livestock brand inspection service for livestock coming into any public livestock market, including sales rings, buying stations or packing plants within the State of North Dakota during said base period, as set forth in the Regulation, including December 19, 1950 to January 25, 1951, inclusive, was 12¢ per head of livestock so brand inspected."

The complaint further alleges:

"VI

"That from August 1, 1951 to the date of this complaint, the defendant, North Dakota Stockmen's Association has sold and supplied services as described in Paragraph V above, for fees set as therein described, at 15¢ per head of livestock so brand inspected, and for which maximum prices of 12¢ per head of livestock so brand inspected were established and are established by the Regulation, as above set forth."

The first and overall question involved in the case is whether or not Congress intended, by the passage of the Defense Production Act of 1950, as amended, to include in its classification of services, so regulated, the brand inspection of livestock and fees charged therefor within the respective states.

A further identity of the parties involved appears essential to an understanding of the Defense Production Act as it may or may not be applicable hereto.

The North Dakota Stockmen's Association is a non-profit corporation organized and existing under the laws of the State of North Dakota. The purposes of the corporation, in brief, were "for the advancement of the interests of the livestock industry of the State of North Dakota and for the protection of the same against fraud and swindlers and to prevent the stealing, taking and driving away of cattle, horses and all other livestock from the rightful owners thereof, and to enforce the stock laws of the State of North Dakota, to make a continuous investigation and study of the livestock industry of the state; to make recommendations relative thereto to public officers and other institutions, organizations, boards and bodies, and generally take whatever action may be deemed necessary in promoting the general welfare of the livestock industry in the State of North Dakota."

The State Livestock Sanitary Board of the State of North Dakota is an agency of the State of North Dakota so created by statute. (Chapter 36-01 NDRC 1943 as amended by Chap. 227 N.D.S.L.1949.) It

has been stipulated that the individual defendants acting as members of the State Livestock Sanitary Board are vested with certain regulatory powers over the inspection of cattle for brands and setting the fees to be charged therefor in accordance with Chapter 36–22 NDRC 1943, as amended by Chapter 231 N.D.S.L.1949.

It has also been stipulated that the North Dakota Stockmen's Association has registered with the United States Secretary of Agriculture under the Packers and Stockyards Act in accordance with Section 217a of Title 7, U.S.C.A., as the market agency to make brand inspections in the State of North Dakota of cattle sold *at livestock markets posted under and subject to the Federal Packers and Stockyards Act.* (Such inspection at the one posted yard in North Dakota is not involved in this case as the fees charged therefor are set by the Secretary of Agriculture.) It has further been stipulated that in accordance with said section of the Act, the North Dakota Stockmen's Association is the only authorized market agency in the State of North Dakota authorized to make brand inspections under the Packers and Stockyards Act.

It has also been stipulated that Section 3 of Ceiling Price Regulation 34 prohibits on and after May 16, 1951, "the sale and the purchase in the course of trade or business of any service covered by the Regulation at a price higher than the ceiling price prescribed by the Regulation for the seller or supplier, of which the Court is asked to take judicial notice."

It was further stipulated, in effect, that the highest price at which the North Dakota Stockmen's Association supplied cattle brand inspection in sales rings, buying stations and packing plants in North Dakota during the base period of December 19, 1950, to January 25, 1951, inclusive, was 12¢ per head of cattle so brand inspected.

36–2202 of the 1949 Supplement to the North Dakota Revised Code of 1943 provides as follows:

"*North Dakota Stockmen's Association's Authority.* The North Dakota Stockmen's Association, a livestock association duly organized under the laws of the state of North Dakota, and duly registered as a market agency under the act of congress commonly known as the packers and stockyards act, is hereby authorized, for the better protection of the livestock industry of the state of North Dakota and for the purpose of securing a uniofity of inspection and cooperation with the department of agriculture of the United States, to make an inspection to determine ownership, of all cattle shipped or consigned from this state to any public livestock markets, including sales rings, buying stations, or packing plants within or without the state of North Dakota."

Section 36–2203 of the 1949 Supplement to the North Dakota Revised Code of 1943, provides:

"*Rules and Regulations; Fees for Inspection.* The North Dakota livestock sanitary board shall, with the advice of the officers of the North Dakota Stockmen's Association, make rules regulating the inspection of cattle for brands at sales rings, packing plants, buying stations and shall set the fees to be charged by the brand inspector. *Brand inspectors* under this act (chapter) shall charge and collect fees for inspections on all shipments or consignments of cattle at livestock markets, at the rate authorized by the United States department of agriculture, and *shall charge and collect fees for inspection at sales rings, buying stations and packing plants as shall be set by the livestock sanitary board,* which funds, so collected, shall be paid into the general fund of the North Dakota Stockmen's Association." (Emphasis supplied.)

The chapter (36–22) also provides that brand inspectors of the association (North Dakota Stockmen's Association) may receive and receipt for funds for the sale of estray cattle and for the handling and disposition of funds derived therefrom. Section 36–2209 provides as follows:

"*State Examiner to Examine Records and Accounts of the Association; Report.* It shall be the duty of the

state examiner to examine the records and accounts of said North Dakota Stockmen's Association and to report thereon to the governor in the same manner as is now provided by law for the examination of records and accounts of public officers."

Beginning with August 1, 1951, fees for brand inspection at sales rings, buying stations, packing plants, etc., were increased by the defendants from 12¢ to 15¢. It is this increase of from 12¢ to 15¢ per head of cattle inspected that the Government claims is a violation of the Regulations issued pursuant to the Defense Production Act of 1950, as amended. It is conceded that the Secretary of Agriculture increased the brand inspection fee for yards posted under the Packers and Stockyards Act from 12¢ to 15¢ effective July 15, 1951. Such increase was not subject to the regulations which the Government seeks to impose here. Subsequent to such increase by the Secretary of Agriculture for posted yards (there is but one in the State of North Dakota), the Livestock Sanitary Board, acting under authority of Sec. 36–2203 of the 1949 Supp. to NDRC 1943, increased the fees for brand inspection in sales rings, etc., from 12¢ to 15¢ effective August 1, 1951. We have, then, the rather peculiar situation of one department of the Federal Government fixing a 15¢ charge for brand inspection at the one posted yard in the state and at the same time another branch of the same government attempting to limit the cost of identical service at nearby sales rings and yards to 12¢.

The Government admits that the rates charged at the one posted yard under the Packers and Stockyards Act are exempt from the Act because they are subject to the jurisdiction of the Department of Agriculture. It argues that as no other yards are subject to such jurisdiction, they are then not exempt and do come within the meaning of the Defense Production Act of 1950, as amended, and are subject to the jurisdiction of the Office of Price Stabilization, which it claims can thereunder maintain a smaller fee for a like service.

The defendants contend, among other things, that brand inspection of livestock is a governmental function coming under the police power of the State of North Dakota and that the North Dakota Stockmen's Association, a non-profit corporation, has been designated by statute as an agency of the State of North Dakota for the performance of such governmental function and that its activities do not come within the purview of the Defense Production Act of 1950, as amended.

In light of the contentions of the respective parties, i. e., the Federal Government's that brand inspection is a service fee arising out of regular trade or business and the defendants' that it is a governmental function arising out of the state's police powers, it would appear necessary that we first classify "brand inspection of livestock", determine its purpose and ascertain if it is a trade or business.

Branding or marking livestock goes back to the very beginning of the cattle industry. In open range communities where cattle graze together, it is necessary that the animals be branded or marked so that ownership might later be established. The law of North Dakota provides for the registering of such brands or marks in the names of the individual owners and the legal effect thereof. 36–0919 of the 1949 Supp. to NDRC 1943 provides as follows:

"*Effect of Registered Brand or Mark.* A legally registered brand on livestock shall be prima facie evidence that the animal bearing the same is the property of the owner of such brand, unless covered by a bill of sale as provided by this act."

Section 36–0510 of the 1949 Supp. to NDRC 1943 provides as follows:

"*Inspection of Livestock; Fees and Regulations Governing.* When an animal enters a livestock sales ring and *before it is offered for sale, it shall be inspected for health and brands.* The inspection for health shall be made by a veterinarian approved by the state livestock sanitary board whether the livestock is moved interstate or intrastate. The fees for such inspection and the manner of payment thereof shall be established by regulations adopted by

the state livestock sanitary board." (Emphasis supplied.)

■ It has already been pointed out that 36–2202 of the 1949 Supp. to NDRC 1943, supra, provides that the North Dakota Stockmen's Association is authorized "for the better protection of the livestock industry of the state of North Dakota and for the purpose of securing a uniformity of inspection and cooperation * * * to make an inspection to determine ownership, of all cattle shipped or consigned from this state to any public livestock markets, including sales rings," etc. The law of the State of North Dakota, then, provides that inspection for health and brands *shall* be made before livestock is offered for sale. In other words, it is mandatory. The purpose of such inspection for either health or brands seems perfectly clear. Insofar as the inspection for brands is concerned, it is to determine ownership, to prevent and detect crime and to prevent fraud and to regulate the sale and distribution of livestock. That has none of the characteristics of a trade or business. It is performed under the direction of the State of North Dakota by a non-profit corporation. It is for the protection and benefit of the public generally. The same section provides for the inspection of animals for health. The health inspection is to be by a veterinarian approved by the State Livestock Sanitary Board and his fees therefor are regulated by the Board. Health inspection of livestock to prevent the sale of diseased meat to the general public cannot be classified as anything other than the performance of a governmental function. This Court believes there to be no difference in classification between health inspection and brand inspection. They are each performed for the benefit of the general public and fall squarely within the classification of governmental functions in the same manner as the inspection of places where food is sold, the regulation and issuance of certificates of title and of licenses for motor vehicles operated within the state.

It further seems clear to the Court that by virtue of Chapter 36–22 of the 1949 Supp. to the NDRC of 1943, the State of North Dakota, through legislative act, designated the North Dakota Stockmen's Association, a corporation, as its agency for the making of brand inspections on cattle sold within the state. In the same section providing for brand inspections before sale (36–0510 of 1949 Supp. to NDRC 1943), the North Dakota legislature provided that health inspections should be made by veterinarians appointed by the State Livestock Sanitary Board and their fees regulated by such Board. There seems to be little difference between such method and inspection for health purposes and the method of brand inspection by the North Dakota Stockmen's Association heretofore described. If the veterinarians are agents of the state in making the health inspection, then certainly the North Dakota Stockmen's Association is an agent of the state in making brand inspections. In other words, the North Dakota Stockmen's Association is, insofar as brand inspection is concerned, designated as an agency of the state to carry out the physical performance of a governmental function.

The United States Attorneys claim that even if that conclusion be correct, which they deny, that the North Dakota Stockmen's Association as a state agency would nonetheless be subject to the provisions of the Defense Production Act of 1950, as amended. They rely greatly upon Case, Commissioner of Public Lands of the State of Washington v. Bowles, Price Administrator, 1946, 327 U.S. 92, 66 S.Ct. 438, 90 L.Ed. 552. That case is complete and adequate authority for the proposition that the Congress of the United States under its war powers possesses the right to regulate the proprietary activities of a state or other local government, where such state or government is engaged in a trade or a business which would have an effect upon the national economy. In that case, the Supreme Court held that the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., was applicable to the activities of the State of Washington in the sale of timber from state-owned school lands. As was stated by the Supreme Court in that case, 327 U.S. at page 100, 66 S.Ct. at page 442, 90 L.Ed. 552:

"Here again, the sale of school-land timber at above-ceiling prices could be just as disturbing to the national inflation-control program as the charging of excess prices for timber located on any other lands."

We have no such situation here and that case is not support for the Government's present contention. In this instance, the State of North Dakota, through the North Dakota Stockmen's Association, is selling neither a commodity nor a service in trade or business. It is in competition with no one. It is exercising purely a governmental function in policing the sale of livestock in the state through having inspectors inspect livestock for brand markings. No one other than the State of North Dakota, through the North Dakota Stockmen's Association, has been authorized to do such inspecting and make charge therefor.

 It is not necessary in this case for the Court to determine whether Congress has the power to limit fees fixed by the State of North Dakota in exercising its police power in regulating, through inspection, the sale of livestock within the state. The Tenth Amendment to the Constitution leaves the police power to the several states. Nevertheless, if Congress, in exercising a constitutionally granted power, such as to wage war, necessarily infringes upon the state reserved police power and such infringement runs contrary to the law of the state, then under the Supremacy Clause of the Constitution, Article VI, Clause 2, the law of the state must give way. That is not the situation here and the Court finds no intent on the part of Congress to attempt to infringe upon the state's police power in passing the Defense Production Act. The regulations promulgated under the Act lend support to such conclusion. Amendment 2 to General Overriding Regulation 14 (Section 3(a) (89) excepts from the operation of Ceiling Price Regulation 34, services supplied directly by the United States, the states, the territories and possessions of the United States and their political subdivisions and municipalities, the District of Columbia, and any agency of the foregoing.

Counsel for the Government point out, however, that a subparagraph of such amendment provides as follows:

"*This exemption does not extend to* the rates, fees or charges, for *services which are incidental or related to or connected with the sale of any commodity by any such government* or governmental agency, or to the rates, fees or charges of sub contractors, lessees, licensees, concessionaries or other persons supplying such service in a private capacity for any such government or governmental agency." (Emphasis supplied.)

As this Court reads the exemption to the exemption, supra, it means simply this, that services supplied by the United States, states, territories, etc., are not exempted from the operation of the Defense Production Act where such fees, charges or services are connected with the sale of any commodity by any such government or governmental agency or other persons supplying *such service* in a private capacity for any such government or governmental agency.

There is here evidenced the clear intention to exempt services by the United States, the states, etc., or agencies thereof excepting where such services are connected with the sale of any commodity by such governments, their agencies or by other persons supplying such service in a private capacity for such government or governmental agency. Such holding does no violence to but is in harmony with the opinion of the Supreme Court in Case v. Bowles, supra.

As an illustration, the State of North Dakota owns and operates a state mill and elevator where it sells flour and other products and where it stores grains and makes charges therefor. Certainly the activities of the State of North Dakota in exercising such proprietary functions through its operation of the state mill and elevator would not be exempted from the provisions of the Act. To so exempt them would allow the State of North Dakota an unfair advantage over its competitors in the trade or business of operating a mill and elevator and would be disruptive of the national

economy. Such a holding would indeed be as unfair as it would have been to allow the State of Washington to sell its timber at over the ceiling price during the days of OPA.

The Court is of the opinion that brand inspection of livestock is not a trade or business within the meaning of the Defense Production Act or the regulations issued in pursuance thereof, that the Act iself does not control and was not intended by Congress to control, regulate or limit the fees charged for a non-competitive inspection service performed by a state or an agency thereof in the exercise of a governmental function under its police powers. Because of that determination by the Court, it is unnecessary to make further comment with reference to the additional points raised by the defendants in their motion to dismiss. Such motion should be granted.

It will be so ordered.